UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| HECTOR GARZA, | § |
| | § |
| *Plaintiff*, | § |
| | §   Civil Action No.  SA-10-CV-510-XR |
| v. | § |
| | § |
| SALLIE MAE, INC., | § |
| | § |
| *Defendant*. | § |

**ORDER ON PARTIAL MOTION TO DISMISS**

On this date, the Court considered Defendant Sallie Mae, Inc.'s Partial Motion to Dismiss (docket no. 4), filed June 28, 2010.  No response has been filed.[1]

**I. Background**

Plaintiff Hector Garza ("Garza") commenced this lawsuit in County Court at Law No. 5 on April 1, 2010, and Defendant Sallie Mae, Inc. ("Sallie Mae") was served on May 21, 2010.  Sallie Mae removed the action to this Court on June 22, 2010.  According to the petition, Plaintiff signed a promissory note for a student loan in June 2007 as a co-signer to the agreement for his brother and niece.  The petition alleges that, "at some point thereafter, the note became due and the Plaintiff's brother, Richard De Leon, began making payments."

De Leon died shortly before Christmas in 2008.  The petition alleges that, pursuant to the

---

[1] The motion was filed and served on Plaintiff on June 28, 2010, making the response due July 12, 2010.  On July 15, after the deadline for responding to the motion to dismiss had already passed, Sallie Mae filed a plea in abatement because Plaintiff had not complied with the DTPA notice requirements.  The Court granted the stay, but expressly noted that the motion to dismiss was not stayed, and that Plaintiff had until July 30, 2010 to file a response.  Plaintiff has not filed a response.  Thus, the motion is ripe for review, but without the benefit of a response from Plaintiff.

1

promissory note, Plaintiff notified Defendant of De Leon's death, and Sallie Mae agreed to discharge the loan if documentation of De Leon's death was provided. Plaintiff submitted a copy of the death certificate in January 2009. In 2009, however, Plaintiff was notified that the account was delinquent, and learned that Defendant was reporting to all three major credit bureaus that the account was overdue. Plaintiff alleges that Sallie Mae did not discontinue the reporting of negative credit information until March 2010, even though Plaintiff sent numerous investigation requests pursuant to the Fair Credit Reporting Act. Plaintiff was forced to hire an attorney, and alleges that he suffered serious and irreparable damage to his credit reputation, including increased credit card balances and loss of available credit, as well as mental anguish. Plaintiff asserts the following claims: violations of the Texas Finance Code; violations of the Deceptive Trade Practices Act ("DTPA"); breach of contract; and violation of the Fair Credit Reporting Act. Plaintiff seeks actual, statutory, and exemplary damages, as well as attorney's fees.

## II. Analysis

Defendant Sallie Mae moves for partial dismissal pursuant to Rule 12(b)(6), asserting that the claims for violations of the Texas Finance Code and DTPA and for breach of contract should be dismissed. If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under 12(b)(6), all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id.* Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level." *Id.* A well-pleaded complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556.

**A. Texas Finance Code**

Plaintiff's petition asserts that Defendant has violated Chapter 392 of the Texas Finance Code. Specifically, Plaintiff alleges that Defendant violated § 392.301(a)(8), which prohibits the use of threats or coercion, including threatening to take an action prohibited by law, in debt collection efforts, and § 392.304(a)(19), which prohibits the use of any false representation or deceptive means to collect a debt or obtain information concerning a consumer. Plaintiff generally asserts that "[t]he conduct of Defendant in harassing Plaintiff in an effort to collect an alleged debt by making false, deceptive and/or misleading representations in connection with the collection of a debt; by engaging in conduct, the natural consequence of which, is to harass, oppress or abuse Plaintiff in connection with the collection of a debt; and by using unfair or unconscionable means to collect a debt, are violative of provisions of the Texas Finance Code, Chapter 392 . . . ."

Defendant contends that Plaintiff fails to detail any efforts by Defendants to collect a debt – much less efforts that were coupled with threats, coercion, or fraudulent or misleading representations, as required by the statute. Defendant notes that Plaintiff does not allege that Defendant attempted to collect on the debt from him at any time or that it affirmatively contacted him by telephone on any occasion, and does not specify any statements made by Defendant to him. Therefore, Defendant argues, Plaintiff does not allege any misrepresentation, misstatement, omission, or harassing conduct by Defendant.

Section 392.301(a)(8) provides, "In *debt collection*, a *debt collector* may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . . (8) threatening to take an action prohibited by law." TEX. FINANCE CODE § 392.301(a)(8) (emphasis added). "Debt collection" means "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5). "Debt collector" means "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." *Id.* § 392.001(6).[2] To prevail under the Texas Debt Collection Act, "the claimant must prove that the defendant was a debt collector." *Catherman v. First State Bank of Smithville, Tex.*, 796 S.W.2d 299, 302 (Tex. App.–Austin 1990, no writ). Under § (a)(8), Plaintiff must also allege that Sallie Mae threatened to take an action prohibited by law in the process of debt collection. TEX. FINANCE CODE § 392.301(a)(8); *Gomez v. Wells Fargo Bank*, Civ. A. No. 3:10-CV-0381, 2010 WL 2900351 at * 4 (N.D. Tex. July 21, 2010).

Plaintiff has made no factual allegations that state a claim under section (a)(8), as the petition does not allege or demonstrate that Sallie Mae was a "debt collector" engaged in "debt collection" or that Sallie Mae made any threats at all, much less a threat to take an action prohibited by law. Formulaic recitation of a cause of action's elements, standing alone, does not state a claim. *Twombly*, 550 U.S. at 555. Despite being on notice of Defendant's motion, Plaintiff failed to respond or to file an Amended Complaint pursuant to Rule 15 to remedy these deficiencies. Accordingly, the Court grants Sallie Mae's motion to dismiss this claim.

---

[2] A debt collector may include "entities attempting to collect their own debts." *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex.App.–Dallas 1996, writ dism'd w.o.j.); *Waterfield Mortgage Co. v. Rodriguez*, 929 S.W.2d 641, 644-45 (Tex.App.–San Antonio 1996, no writ).

Section 392.304(a)(19) provides, "Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." TEX. FINANCE CODE § 392.304(a)(19). The false representations alleged in the petition are that (1) Sallie Mae agreed to discharge the loan upon receiving proof of De Leon's death, but did not do so in a timely manner, (2) Sallie Mae "made assurances that the information will be corrected," and (3) Sallie Mae erroneously reported the debt as overdue to the credit bureaus. Again, Plaintiff has failed to allege that Sallie Mae was a debt collector. Further, there are no factual allegations establishing that Sallie Mae used any of these allegedly false representations or any deceptive means "to collect a debt or obtain information concerning a consumer," as required by § 392.304(a)(19). Accordingly, the Court grants Sallie Mae's motion to dismiss this claim.

**B. Deceptive Trade Practices Act ("DTPA")**

It appears that Plaintiff's DTPA claim is based solely on the alleged violation of the Texas Debt Collection Act. Specifically, Plaintiff alleges that Defendant "engaged in certain false, misleading and deceptive acts, practices[,] and/or omissions actionable under the Texas Deceptive Trade Practices-Consumer Protection Act as alleged hereinbelow." In the next paragraph, Plaintiff alleges that "Defendant engaged in false, misleading or deceptive acts as provided by the . . . Debt Collection Act (Texas Finance Code, Section 392.404(a))." Plaintiff does not allege any other false, misleading, or deceptive acts in his second claim for relief under the DTPA. The DTPA allows a consumer to bring a cause of action under the DTPA if he is granted that right by another law. TEX. BUS. & COM. CODE § 17.50(h). Certain statutes "tie in" to the DTPA such that a violation of the

statute is also a violation of the DTPA. The Texas Debt Collection Act is such a tie-in statute. TEX. FIN. CODE § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter."). However, insofar as Plaintiff's DTPA claim is based on a violation of the Texas Debt Collection Act, the claim fails because the Court has already held that Plaintiff has failed to state a claim under the Texas Debt Collection Act.

To the extent Plaintiff may be asserting a claim under the DTPA independent from the Texas Debt Collection Act, the Court will address Defendant's contention that Plaintiff's claim for violation of the DTPA is preempted by federal law, specifically, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x. Affirmative defenses, including preemption, may be raised by motion to dismiss provided that the complaint shows affirmatively that a claim is barred by the affirmative defense. *Parra v. Mountain States Life Ins. Co. of America*, 52 F.3d 1066, *2 (5th Cir. 1995).

Defendant's motion asserts that a "substantial body of case law confirms that the Fair Credit Reporting Act ('FCRA') preempts statutory state law claims based on the operative facts setting forth a claim for a violation of FCRA." Motion at 5-6. However, Defendant cites only one case – the district court decision in *Carlson v. TransUnion LLC* – in support of this proposition, and fails to inform the Court that there is a split of authority concerning the preemptive effect of the FCRA. In fact, it appears that courts have taken at least three different approaches to FCRA preemption, and neither the Fifth Circuit nor the Supreme Court has addressed the issue.

The FCRA contains an express preemption clause, which states, "No requirement or prohibition may be imposed under the laws of any State – (1) with respect to any subject matter regulated under – (F) section 1681s-2 of this title, relating to the responsibilities of persons who

furnish information to consumer reporting agencies, except that this paragraph shall not apply [to a Massachusetts and California statute not at issue here]." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 is entitled "responsibilities of furnishers of information to consumer reporting agencies" and contains two subsections: subsection (a) governs the "duty of furnishers of information to provide accurate information" and subsection (b) governs the "duties of furnishers of information upon notice of a dispute." The plain language of § 1681t(b)(1)(F) therefore appears to preempt any state law relating to the duties of furnishers of information to provide accurate information to credit reporting agencies and the duties of furnishers of information upon receiving notice of a dispute.

However, another section of the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any . . . person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title . . . based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). In attempting to reconcile these two seemingly inconsistent provisions, the district court in *Carlson v. TransUnion LLC*, 259 F. Supp. 2d 517, 521 (N.D. Tex. 2003) concluded that § 1681h(e) applies only to torts, while § 1681t(b)(1)(F) applies only to state statutory regulation. The court disagreed with other courts that had taken a temporal approach to reconciling the two provisions. Those courts have concluded that because the duties under section 1681s-2(b) arise only upon the furnisher's receipt of notice of a dispute from a credit reporting agency, state laws that provide a cause of action against furnishers of information based on their actions after receiving such notice are preempted (meaning that claims based on actions occurring before notice was received are not preempted). *See, e.g.*, *Alkagi v. Nationscredit*

*Financial*, 196 F. Supp. 2d 1186 (D. Kan. 2002). Further, some courts have concluded that section 1681t(b)(1)(F) preempts all state causes of action that relate to the subject matter regulated by § 1681s-2. *See, e.g.*, *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356 (E.D. Pa. 2001).[3]

Under any of these approaches, all claims asserted by Plaintiff under the DTPA for actions taken by Defendant after the time it received notice from a credit reporting agency would be preempted by the FCRA. Plaintiff alleges that he sent "numerous reinvestigation requests pursuant to the Fair Credit Reporting Act to the Defendant and the several credit bureaus," but does not allege when Defendant received notice from a credit reporting agency. To the extent that Plaintiff bases his DTPA claims on actions or omissions on the part of Defendant after such notice was received, however, those claims are preempted by the FCRA.

The only approach that would find Plaintiff's DTPA claims related to the time period before Defendant received notice of the dispute from a credit reporting agency to not be preempted is the temporal approach. The courts taking that approach rely on the fact that a furnisher's duties to a consumer (and a consumer's private right of action against a furnisher) under § 1681s-2(b) arise only upon receipt of notice from a credit reporting agency under § 1681i(a)(2) of the FCRA. However, § 1681t(b)(F) does not differentiate between § 1681s-2(a) and (b), instead preempting any requirement or prohibition with respect to any subject matter regulated under § 1681s-2 as a whole. Section 1681s-2(a) prohibits reporting information with actual knowledge of errors at any time and reporting inaccurate information after being notified by the consumer that the information is

---

[3] And some courts have concluded that there is no conflict between § 1681h(e) and § 1681t(b)(F) in actions against furnishers of information. *Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 194 (D. Mass. 2006). The *Islam* court stated in dicta, however, that were it forced to choose, it would choose the statutory/common-law distinction approach.

inaccurate. It also imposes a duty to correct and update information and a duty to provide notice of a dispute by a consumer. Thus, Plaintiff's DTPA claim imposes requirements and prohibitions that relate to the subject matter of § 1681s-2, and is preempted by the express language of § 1681t(b)(1)(F).

Accordingly, the Court dismisses Plaintiff's DTPA claims to the extent the claim is based on violations of the tie-in statute, the Texas Debt Collection Act, and as preempted by the FCRA.

**C. Breach of Contract**

Plaintiff alleges that he "entered into a valid and enforceable promissory agreement with the Defendant" and "completed all acts necessary under the agreement and substantially performed," but "Defendant, however, failed to perform its obligation under said promissory agreement and a result, the Plaintiff suffered damages." Defendant contends that Plaintiff fails to state a cause of action for breach of contract because he "failed to allege a provision of the contract that Defendant allegedly breached" and failed to allege "conduct amounting to a breach of the contract." Motion at 7.

The elements of a breach-of-contract claim include: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). Here, Plaintiff alleges in the petition that (1) Plaintiff and Sallie Mae entered into a binding and enforceable contract, which was the promissory agreement; (2) pursuant to the agreement, Sallie Mae agreed to discharge the loan upon receiving proof of De Leon's death; (3) Plaintiff properly submitted the necessary documentation, (4) the loan was not discharged for over a year; and (5) as a result of this error, Plaintiff suffered damage to his credit rating, his credit balances increased, and his amount of available credit disappeared.

Plaintiff's factual allegations are sufficient to state a breach-of-contract claim. Unlike *Fannie Mae v. United States Prop. Solutions, L.L.C.*, Civ. A. No. H-08-3588, 2009 WL 1172711 (S.D. Tex. April 28, 2009), the case cited by Defendant, Plaintiff does not allege "generally that Fannie Mae is in breach of the loan documents." Rather, he specifies which provision of the note has been breached. While it would be preferable for Plaintiff to cite to the particular provision of the contract by paragraph or section number, to quote its language, or to include a copy of the contract as an exhibit to the Complaint, it is not necessary. If Defendant takes issue with the merits of the claim, Defendant should file a motion for summary judgment; however, for purposes of a 12(b)(6) motion, the Complaint is sufficient. This aspect of Defendant's motion is therefore denied.

### III. Conclusion

Defendant's partial motion to dismiss (docket no. 4) is GRANTED IN PART AND DENIED IN PART. The motion is granted with respect to Plaintiff's claims for violations of the Texas Finance Code and Deceptive Trade Practices Act, and those claims are DISMISSED. The motion to dismiss Plaintiff's breach-of-contract claim is denied. Because this order disposes of Plaintiff's DTPA claims, upon which the stay is based, the Court lifts the stay. The parties shall submit a proposed scheduling order (see docket no. 3) and Plaintiff shall file his magistrate judge consent form no later than **October 7, 2010**.

SIGNED this 21st day of September, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE